UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | ) | |
| COMPUTER SERVERS AND RECORDS | ) | Case No.: 18-mj-185-01-AJ |
| OF GOOGLE INCORPORATED FOR | ) | |
| INFORMATION ASSOCIATED WITH | ) | |
| E-MAIL ACCOUNTS | ) | UNDER SEAL |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, BRENDAN M. QUINLAN, being first duly sworn, hereby state:

INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent employed by the Office of Export Enforcement (OEE), Bureau of Industry and Security ("BIS"), of the United States Department of Commerce.  I have been employed as a Special Agent with the United States Department of Commerce since November 2016, and before that was a Special Agent with the Department of State, Diplomatic Security Service beginning in March 2010.  Prior to that, I was an Immigration Enforcement Agent with the United States Department of Homeland Security for approximately three years.  I am authorized to make arrests for violations of federal law and I am familiar with the means by which individuals use computers and information networks to commit various crimes.

2.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the individuals and entities listed below, and others, are violating the International Emergency Economic Powers Act, in violation of 50 U.S.C. §§ 1702 and 1705, by exporting U.S.-origin goods to the Advanced Engineering Research Organization (AERO), an entity in Pakistan currently on the Bureau of Industry and Security Entity List, and as such, denied from receiving such goods.  Their activities are also violations of 13 U.S.C. § 305 (unlawful export information activities), 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 554 (outbound smuggling), 18 U.S.C. § 1001 (false statements), and 18 U.S.C. § 1956 (money laundering) (further referred to as the "Subject Offenses.")

3. As shown in this Affidavit, there is probable cause to believe that the individuals and entities listed below, as well as their last known addresses, constitute a procurement network that exists to acquire U.S.-origin commodities for AERO in Pakistan in violation of the Subject Offenses:

a.  Haji Wali Muhammad Shiekh, ░░░░░░░░░░░░░ Mississauga, Ontario, Canada

b.  Muhammad Wali, ░░░░░░░░░░░ Mississauga, Ontario, Canada

c.  Kamran Wali, ░░░░░░░░░░░ Saddar, Rawalpindi, Punjab, Pakistan

d.  Jason Gao, ░░░░░░░░░░░░░░░░░░░░░ Kowloon, Hong Kong

e.  M.A.  Khan, ░░░░░░░░░░░░░░░░░░░░░ Kowloon, Hong Kong

f.  Waheed Ahmed, ░░░░░░░░░ Essex, UK

g.  Shamsa Ahmed, ░░░░░░░░░ Essex, UK

h.  Hina Iqbal, Oak Field House, ░░░░░░░░░ Essex, United Kingdom

i.  Rana Tanveer, ░░░░░░░░ Beckley, WV

j.  Buziness World, 4453 Weeping Willow Drive, Mississauga, Ontario, Canada

k.  Business World, 2nd Floor, Kau On Building, 251-253 Cheung Sha Wan Road, Kowloon, Hong Kong

l.  Industria HK Ltd, 2nd Floor, Kau On Building, 251-253 Cheung Sha Wan Road, Kowloon, Hong Kong

m.      Transcool Auto Air Conditioning, 2nd Floor, Kau On Building, 251-253 Cheung Sha Wan Road, Kowloon, Hong Kong

n.      Business World, 1st Floor, Jahanzeb Center, Bank Road, Saddar, Rawalpindi, Punjab, Pakistan

o.      Product Engineering, Unit 10, Chowk Gowalmandi, Daryabad, Gowalmandi, Rawalpindi, Punjab, Pakistan

p.      Business International GB, Oak Field House, 3 Oak Field Road Ilford

Essex, United Kingdom

q.      Industria GB 109 Rose Lane in Romford, UK

r.      Industria, Inc., 205 Prince Street, Beckley, WV

4.      I submit this affidavit in support of an application for a warrant under 18 U.S.C. § 2703(a) and Rule 41 of the Federal Rules of Criminal Procedure to search and seize records and data from the e-mail accounts identified as industria____@gmail.com ("TA1"), buzines____@gmail.com ("TA2"), Asad.____@gmail.com ("TA3"), business____@gmail.com ("TA4"), Buziness____@gmail.com ("TA5"), wali.produc____@gmail.com ("TA6"), buzinessworl____@gmail.com ("TA7"), proc.business____@gmail.com ("TA8"), transcool____@gmail.com ("TA9"), transcoolau____@gmail.com ("TA10") , businessinternati____@gmail.com ("TA11"),  magihu____@gmail.com ("TA12"),  and proden____@gmail.com ("TA13"), ("the Target Accounts") (as described in Attachment A).

5.      I have probable cause to believe that these accounts contain evidence, fruits, and instrumentalities of the crimes identified above, as described in Attachment B.

6.     Based on the e-mail addresses' domain name, I have probable cause to believe that the accounts and relevant data are maintained by Google, Inc. ("Google"), which government databases indicate, accepts service of process at 1600 Amphitheatre Parkway, Mountain View, California, as described in Attachment A.

7.     The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

<u>RELEVANT LAW</u>

8.     Under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, the President of the United States was granted authority to deal with unusual and extraordinary threats to the national security, foreign policy, or economy of the United States.  50 U.S.C. § 1701(a).  Pursuant to that authority, the President may declare a national emergency through Executive Orders that have the full force and effect of law.  Among other things, IEEPA empowers the President to issue regulations governing exports from the United States.

9.     On September 18, 2014, acting under the authority of IEEPA, the multi-agency body known as the End-user Review Committee (ERC) "determined to add Pakistan's Advanced Engineering Research Organization (AERO) and entities working with AERO to the Entity List for their involvement in activities contrary to the national security and foreign policy interests of the United States related to the illicit export, reexport and transfer (in-country) of items subject to the EAR to unauthorized end users in Pakistan as described in § 744.11(b)(5) of the Export Administration Regulations (EAR, 15 CFR §§730-774). These entities' involvement in the procurement of sensitive U.S. technology in support of Pakistan's development of its missile and

strategic unmanned aerial vehicle (UAV) programs is in violation of § 744.3 of the EAR, which requires a license to export, reexport or transfer (in-country) any item subject to the EAR that the exporter, reexporter, or in-country transferor knows will be used in the design, development, production or use of rocket systems by a country listed in the EAR's Country Group D:4 in Supplement No. 1 to part 740, in which Pakistan is included."[1]

10. Effective December 15, 2016, the ERC also added the Pakistan Air Weapons Complex (and six other entities) to the BIS Entity List, writing that they "Have been involved in actions contrary to the national security or foreign policy interests of the United States," and that "Pursuant to § 744.11(b) of the EAR, the ERC determined that the conduct of these seven persons raises sufficient concern that prior review of exports, reexports or transfers (in-country) of items subject to the EAR involving these persons, and the possible imposition of license conditions."

11. I know from my training and experience that Pakistan's unregulated nuclear program regularly employs a network of individuals and companies in third countries in order to obscure the ultimate end-user of commodities as well as the source of payment for the same. In fact, as part of the addition of AERO to the BIS Entity List, it was published that "Since 2010, Pakistan's AERO has used intermediaries and front companies to procure U.S.-origin items by disguising the end-uses and end-users of the items from U.S. exporters thereby circumventing BIS licensing requirements," and that "AERO has procured items on behalf of Pakistan's Air Weapons Complex, a Pakistani government entity responsible for Pakistan's cruise missile and strategic UAV programs."

---

[1] As published in The Federal Register on September 19, 2014, 79 FR 55998, pages 55998-56009.

12.     Under IEEPA, it is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation, or prohibition issued pursuant to the statute.  50 U.S.C. § 1705(a).  Willful violations of the EAR constitute criminal offenses under IEEPA, and carry a 20-year maximum term of imprisonment and up to a $1,000,000 fine.  50 U.S.C. § 1705(c).  Accordingly, an export that was completed or attempted with the intent that it would be ultimately destined for AERO or the Pakistan AWC would be in violation of IEEPA.

13.     I am also aware from my training and experience that entities such as AERO and the Pakistan AWC employ mechanisms by which they obfuscate the source of payments for commodities destined for companies and individuals on the BIS Entity List.  Violations of IEEPA are "specified unlawful activities" as defined in 18 U.S.C. § 1956.  Therefore, an attempt to "disguise the nature, the location, the source, the ownership, or the control of the proceeds" or transferring funds from outside the United States to inside the United States is violation of the money laundering statute.

14.     Moreover, some of the information contained in this affidavit comes from my review of the Automated Export System (AES) database maintained by US Customs and Border Protection.  "AES" contains information provided to the United States Department of Commerce in the form of "Electronic Export Information" ("EEI") forms. These forms must be filed by parties to the transaction that are in the United States, such as the seller or shipping company (15 CFR § 30.3), and contain information about all of the parties involved in the transaction.  Providing false information, or causing false information to be provided to the United States Department of Commerce on an EEI, is a violation of 13 U.S.C. § 205 and 18 U.S.C. § 1001.

FINANCIAL TRANSACTIONS

15.     Throughout my investigation, businesses in the United States have provided me with information that shipments they sent to Hong Kong, the United Kingdom, Canada and Pakistan have been paid for by "Buziness World" and Haji Wali Muhammad Shiekh of Ontario, Canada.

16.     Records maintained by the government of the Province of Ontario, Canada, which I have reviewed, reflect that "Buziness World" is registered in Ontario under Business Identification Number 270217102.   Moreover, it is a Sole Proprietorship registered to Haji Wali Muhammad Sheikh of [                    ] in Mississauga, Ontario.  According to employees of the US Department of State with whom I have corresponded, this is a residential address.

17.     Two prevalent ways by which money which is exchanged in dollars is transferred between financial institutions are The Clearing House for Interbank Payment Systems (CHIPS) and the Federal Reserve Bank of New York wire services (Fedwire).  Pursuant to a grand jury subpoena, both Fedwire and CHIPS provided information to me about money transfers involving the numerous parties identified as assisting in the unlawful procurement of U.S. origin goods. According to CHIPS, in May and June of 2014, The Canadian Imperial Bank of Commerce account controlled by the Buziness World of [                    ] Mississauga, Ontario, Canada received five wire transfers from an account held by "Director Finance Project 250" ("DFP 250") at the United Bank of Pakistan.  DFP 250 is not listed on the BIS Entity List, nor have I been able to identify any exports received by them in Pakistan or elsewhere.

18.     The account number at the United Bank of Pakistan for DFP 250 is 206660088. Beginning in July of 2014, this account reflects a name change to "The Business World." Subsequent wire transfers from the account in the name of Business World in Pakistan to Buziness World in Canada continue until at least February of 2017.

19.     Fedwire information indicates that Buziness World in Mississauga, Ontario, as well as at 5 Capri Road, Unit 1806 Etobicoke, Ontario (using a Royal Bank of Canada account) have both received funds from The Business World in Rawalpindi, Pakistan using a National Bank of Pakistan account.  These wires begin in March of 2015 and continue until at least June of 2017.  The funds that are wired out of the Royal Bank of Canada account to US businesses are completed using the name "Haji Wali Muhammad Sheikh" at

20.     JP Morgan Chase (JPMC) bank provided me with information about accounts held by "DFP 250" at United Bank of Pakistan and the National Bank of Pakistan.  Although DFP 250 is not a customer of JPMC, United Bank of Pakistan maintains a correspondent account with JPMC.  According to documents provided to me by JPMC, in March of 2017, DFP 250 received in excess of 5,000,000.00 USD in two wires from an account at Habib Metropolitan Bank Limited in Pakistan that is held by DFP 250, but which also lists AERO as a holder of the account.  One of the accounts credited was number 20666____ at United Bank Limited of Pakistan.

21.      Deutsche Bank USA (DBUSA) provided me with information in their possession about accounts held by DFP 250 at banks with which they have a correspondent relationship in Pakistan.  DBUSA provided documentation that shows United Bank Limited, Pakistan has account number 20666____ registered to DFP 250.  However, three transactions in 2014 list the owner of this account as AERO.

22.     DBUSA also provided documentation that in April of 2014, DFP 250 used United Bank account number 2066 ⬚⬚⬚ to transfer 800,000 USD to AERO at Habib Bank in Pakistan.  Moreover, DBUSA shows that the address for DFP 250 and AERO at United Bank Limited are all the same:  Central Registry, Hazara Road, Hassanabdal, Dist. Attock, Pakistan.

23.     Documents from the banks and wire services reflect that AERO, DFP, and The Business World in Pakistan all use a registration code of "9010628-8."  According to a website maintained by the Pakistani Federal Board of Revenue, this is a "free tax number" assigned to the Pakistan Air Weapons Complex by the Pakistan Federal Board of Revenue.  A Free Tax Number is "issued by the Board to persons who are otherwise exempt from holding National Tax Number (NTN) for the purposes of identification."  This number was given as part of the account holder information for account number 20666 ⬚⬚⬚ as late as 2016, which was subsequently retitled to The Business World.

24.     Documentation from the National Bank of Pakistan, New York Branch, support this information.  This data also reflect that four times between 2016 and 2018, funds totaling at least $25,224.39 were sent from the Business World account at the National Bank of Pakistan to Business International in the United Kingdom using accounts at United National Bank, HSBC, and the National Bank of Pakistan.

25.     CHIPS records reflect that at least one time in 2015 Industria in West Virginia received a wire from Business Interntaional GB of 3 Oak Field House in Ilford, Essex, UK.  Also, Industria of West Virginia received one wire in 2015 and one in 2017 from Industria GB on 109 Rose Lane in Romford, UK. Moreover, in 2018 Industria in West Virginia received one wire from Industria in Hong Kong.

## INVESTIGATION OF EXPORTS

26.     In a review of records normally kept by BIS, I discovered that the Miami

Field Office had investigated Business International GB in regards to a shipment made by

a company in Orlando, Florida in September of 2014.  This export, of a Helium Leak

Detector manufactured by a business in Nashua, New Hampshire, was purchased by:

Hina Iqbal
Business International GB Ltd
3 Oak Field House
Oak Field Road Ilford
Essex IG1 1EF
United Kingdom

(this appears, from open source mapping software, to be a retail shop)

This purchase was in turn shipped to:

Industria H.K. Limited
253 2nd Floor, Kau on Building 251-253
Cheung Sha Wan Road
Sham Shui Po Kowloon, Hong Kong ("the Cheung Sha Wan Road address")

(this address appears, from open source mapping software, to be an approximately 10 story
industrial building)

27.     Documents received from the US vendor, Turbo Vacuum of Orlando,

Florida, reflect that the e-mail address used to communicate with the buyer is

industria        @gmail.com. (TA1) The person writing to Turbo Vacuum identifies

herself as "Hina."

28.     Pursuant to a grand jury subpoena, Google, Inc. returned information about

industria        @gmail.com. (TA1) This account shows a backup email address of

buzines        @gmail.com (TA2). TA1 has only been accessed from IP addresses in Pakistan.  The

SMS number begins with "44," the UK country code. (SMS is a common abbreviation for "Short

Message Service" which is synonymous with a text message.  This number, therefore, is a

10

mobile telephone number.)   Moreover, the e-mail address sarah@buziness-　　com is listed as

an alternate e-mail.

29.    A search of open internet records located a possible website for the company:

www.buziness　　com.  According to this website:

> Business International was incorporated in 1993 as a supplier of engineering, laboratory
> and material handling equipments / instruments. In 2002 Business International has been
> converted into a Private Limited Company registered in UK with the name of Business
> International GB Limited.
>
> Our staff has extensive experience with industries, its people, and products and we
> provide with our commitment; for quality, reliability, and speedy service.
>
> The Company is supplying parts, machinery, and equipments to the following industries
> as per their requirements:
>
> - Cement
> - Engineering
> - Petroleum
> - Pharmaceutical
> - Textile
> - Steel
> - Sugar
> - Fertilizer
>
> Business International is providing utmost & state of the art services from procurement
> guide to consolidation of their cargos, as a buying representative of world-renowned customers In
> order to cover the maximum client requirement.
>
> Our Mission
> Our mission is to take the hassle out of importing and supplying your required items with
> our established links to numerous manufacturers in USA, UK, Europe and worldwide, at a
> reasonable price on your doors. We deal with manufacturers who produce the best items on earth
> i.e. tools, equipments, parts and high-end industrial products and machinery. Think of BI as one
> the most efficient import/export company around.
>
> Excellent Customer Services
> We are providing services and support to our valued customers from United Kingdom
> and leave no time gaps and cover almost all industrial requirement of our clientele in Asia,
> Middle East, UK, and Europe.

30.    I conducted a query for www.buziness　　com of internet registry data and the

results show that it was first created in 2002 and last updated in September of 2016.  This

domain name is registered to Nexus Technologies in Islamabad, Pakistan.

31.     In January of 2017 I met with Dr. Lori Krupa of McPherson, a company

that fabricates spectrometry equipment in Chelmsford, Massachusetts.  Krupa told me

that in September of 2016 she was contacted via e-mail by "Asad Ikram" of International

Business LTD of Ilford, UK regarding the purchase of a Soft X-Ray and XUV

Monochromator.  This sale was never completed. The e-mail address used by Ikram is

asad.███████@gmail.com (TA3).  The physical address given is:

> 1-6 Oak Field Road
> Ilford, Essex
> IG1 1EF

32.     Pursuant to a grand jury subpoena, Google, Inc. provided me with

subscriber and session login information for asad.███████@gmail.com (TA3).  The IP

login information, when cross-referenced with publicly available IP registry records,

revealed that this account has only ever been accessed from within Pakistan, and not from

the United Kingdom.

33.     My review of the publicly available United Kingdom Companies house

data revealed that Business International was incorporated on October 09, 2002 by MW

Douglas & Company, LTD of London, a nominee secretary, and the current director of

the concern is:

> Waheed AHMED
>
> ███████████
> Ilford, IG2 7DZ
> DOB December ████, British

34.     Acting on this information, UK law enforcement identified AHMED as

being born on December 23, ████ in Rawalpindi, Pakistan.  He is a naturalized UK

citizen, holding passport number 51647████.

35.     A search for exports associated with the Cheung Sha Wan Road address in Hong Kong (see paragraph 26 of this Affidavit) revealed records for at least three businesses:  Industria H.K. Limited, Transcool Auto Air Conditioning, and The Buziness World.

36.     In September of 2017, at my request, US Commerce Department employees stationed in Hong Kong searched official business records in Hong Kong for Industria, Transcool and The Buziness World:

- Records reflect that as of July 07, 2017 Industria's Secretary is an individual named Ashraf Khan MUHAMMAD, and the director is Waheed AHMED, holding UK Passport 51647___.  Both parties and the corporation provide busines___@gmail.com (TA4) as their e-mail address.

- Records for Business World show that the owner is Ashraf Khan MUHAMMAD, and that it was established in 2008.

- Transcool Auto Air records also show that it is owned by Ashraf Khan MUHAMMAD, but also show that it is a "branch" of Business World.

37.     On September 19, 2014, East Coast Microwave of Woburn, MA shipped Coaxial Connectors to Industria in Hong Kong.  I met with representatives from East Coast Microware who provided documentation related to this shipment.  The documents reflect that they had been corresponding with a person who identified himself as Kamran Wali.  Wali used the e-mail address buziness___@gmail.com (TA5) and provided the following phone numbers:

+92 3215363___
+92 515510___
+92 515700___
+92 515790___

"92" is the international dialing code for Pakistan.

The address line in these e-mails reflected the following address:

1st Floor, Jahanzeb Center
Bank Road Saddar Rawalpindi
Punjab, Pakistan 46000

38.     Furthermore, documentation reflects that this transaction was paid for

using a credit card associated in the name of Haji Walim Sheikh at the same address in

Rawalpindi, Pakistan.  Using records maintained by the United States Secret Service, I

determined that this card was issued by "Canadian Tire Bank" of Oakville, Ontario,

Canada.

39.     Records obtained from Google, Inc. reflect that the e-mail address used to

communicate with East Coast Microwave, buziness    @gmail.com (TA5), has only

ever been logged into from Pakistan, that the backup e-mail address is

wali.produc    @gmail.com (TA6), and that the SMS number associated with it reflects

a Pakistan country code.

40.     Records from a grand jury subpoena issued to Google pertaining to

wali.product    @gmail.com (TA6), show that this account is registered to Muhammad

Ifran Wali, has a recovery e-mail address of buziness    @gmail.com (TA5), was

registered from an IP address located in Pakistan, and the SMS number associated with it

reflects the country code "92" which is assigned to Pakistan.

41.     The buziness    @gmail.com (TA5) e-mail address has also been used

to communicate with other US companies.  Records provided to me by Spacecraft

Industries of Las Vegas, Nevada reflect that on 08 January 2016, it exported a shipment

to The Business World in Hong Kong.  The items were classified as "electrical

connectors."  Spacecraft's documentation show that the bill-to address was:

14

1st Floor, Jahanzeb Center Bank Road Saddar
Rawalpindi, Punjab, Pakistan
The point of contact listed is Kamran Wali,
buziness⬜⬜⬜@gmail.com (TA5)
+92 3215363⬜⬜ fax +92 515790⬜⬜.

The Point of Contact on the invoice in this shipment is "PAC KAMRA." The payment

information for this company is a Visa card, number 4504 4000 1882 ⬜⬜ in the name of

Muhammad A Wali,⬜⬜⬜⬜⬜⬜Mississauga, Ontario, Canada, LV5 1K2. US

Secret Service credit card data reflect that it was issued by the Canadian Imperial Bank of

Commerce, located in Toronto, Ontario, Canada. Tracking information from UPS reflect that

this shipment was received by "Mr. Wali" on January 11, 2016.

42.      The customer in this transaction completed a "New Account Application" which

was also provided to me. In this application, the company is listed as The Business World in

Rawalpindi, Pakistan. The payment information given is for Muhammad A Wali using the credit

card listed above at the Mississauga address. The Buyer is listed as "PAC Kamra." Also

provided is UPS account number V917⬜⬜ and DHL account number 96879⬜⬜

43.      DHL provided information for account number 96879⬜⬜ These records do not

indicate any ownership of the account, but they do reflect nine shipments from the United States

to Pakistan and one to Hong Kong in 2016 and 2017.

44.      UPS has also provided me with records for customer number V917⬜⬜ which

according to the documents provided by Spacecraft Components in Las Vegas is held by The

Business World in Hong Kong. In these documents were records for a shipment from "Industria

Ins," located at 205 Prince Street in Beckley, WV to Business World in Rawalpindi, Pakistan on

May 12, 2016 that contained two Gaussmeters. The included invoice states that it was sent by

"Industria GB Limited" at the same Prince Street address.

15

45.     West Virginia Secretary of State records reflect that Industria Inc. in Beckley, WV is owned by Rana Zeehsan Tanveer.  Also at this location is Roma Pizza Grill, of which Tanveer is also an officer.  The phone number provided for the shipment is 703-869-███.  Social media reflects that this phone number is associated with a profile for "Zeeshan Tanveer." The name on the shipment is "Shaan."

46.     Department of State records reveal that Tanveer was born in Rawalpindi, Pakistan and came to the United States to attend Mountain State University in Beckley.  Tanveer's visa application lists his employer as Business International in Pakistan.  Notes from the consular officer at the time of his application state that he was working as a helper at a family business run by his uncle.

47.     AES shows that on March 27, 2014 Vacuum Processes, Inc. of Everett, PA shipped a "Slide Valve" valued at 6064 USD to "Industrial HK Limited."  On 14 August 2017, I contacted the owner of Vacuum Processes John Swatkoski, who was unable to provide further information about this customer.  Subsequently, on July 17, 2018, SA Peter Meyers of OEE New York met with Swatowski and others at their facility in Everett, PA.  I have read SA Meyers's report of this interaction and reviewed documents supplied to him by Vacuum Processes.  These documents reflect that Swatowski may have been unfamiliar with this sale at first because it was actually made to Business International GB then shipped to Industria H.K. Limited in Hong Kong.  The associated correspondence was with "Hina Iqbal," using the e-mail address Hina@buziness-███com.

48.     DHL confirmed that this shipment came from Vacuum Processes on March 27, 2014.  Swatkoski's information is on the Air Waybill and Commercial Invoice, which indicates that the commodities are parts for Leybold industrial vacuum pumps.  The shipping

16

documentation reflects that a 3rd Party's DHL account was used for the shipment.  According to

DHL, the account, number 95579⬛⬛⬛ pertains to:

> Industria GB LTD
> 109 Rose Lane
> Romford, UK

UK Companies house records show that this concern is owned and controlled by:

> Shamsa AHMED
> ⬛⬛⬛⬛⬛⬛⬛
> Ilford, UK

UK authorities further identified Shamsa AHMED as being born on March 22, ⬛⬛⬛ in

Rawalpindi, Pakistan, and as being a citizen of the UK.  Her passport number is 51626⬛⬛⬛.

49.   DHL provided further information on the Industria GB account which includes a

commercial invoice from Industria, Inc of Beckley, WV dated 10 May 2016 that was shipped to

the Pakistani Navy.  The invoice for this shipment is on the same letterhead as the "Industria GB

Limited" invoice located with UPS records from May 12, 2016.  The e-mail listed is

idustria⬛⬛⬛@gmail.com.  (This may be a typographical error, and the correct address is

industria⬛⬛⬛@gmail.com, (TA1) the address used in the Turbo Vacuum sale.)  This account

also shows a shipment described as "documents" from Aeronet of Torrance, California to

Business International in Ilford, UK and one described as "documents" from Carrier Captain

Corp of Elizabeth, NJ to Waheed Ahmed at the same Ilford, UK address.

50.   On December 30, 2014, the Digi-Key Corporation of Thief River Falls,

Minnesota exported a shipment to M.A. Khan of Business World in Hong Kong.  This shipment

contained an Altera Embedded Systems Development Kit valued at 3060 USD.  Digi-Key

provided me with documentation pertaining to this export.  Correspondence about this shipment

took place between Digi-Key and Khan using the e-mail address businessworl⬛⬛@gmail.com

(TA7). Khan also wrote to Digi-Key that the item in question would be used by the Abacus Polytechnic College, Railway Road Haripur, KPK, Pakistan, 22660 for "Studies/Designing."

51.     On 30 December 2014, Khan sent Digi-Key a .jpg image.  This image shows a computer screen.  On the screen are the details of an electronic funds transfer from The Hongkong and Shanghai Banking Corporation Limited (HSBC) in the amount of 3060 USD. The metadata[2] from this image shows that it was taken from an iPhone 6 on December 29, 2014 at coordinates 33°58'48.3"N 71°31'49.6"E.  This is a house in Peshawar, Pakistan.

52.     Records provided to me by Google, Inc. in response to a grand jury subpoena reflect that buzinessworl___@gmail.com (TA7) has only ever been accessed from IP addresses in Pakistan.  Moreover, the SMS number associated with this account begins with "92," the country code for Pakistan.  The back-up e-mail address listed is proc.business___@gmail.com (TA8).

53.     Records from a grand jury subpoena issued to Google, Inc. reflect that proc.business___@gmail.com (TA8) is registered to someone named Faisal Sattar, was registered from an IP address in Pakistan, and has only ever been accessed from IP addresses in Pakistan.  The backup e-mail address for the account is faisalsattar___@gmail.com and the SMS number associated with it begins with "92," the country code for Pakistan.

54.     AES records reflect that on December 15, 2015, Hybrid Electronics of Casselberry, Florida exported electronic parts labeled as "Capacitor Aluminum Electrolytic" to

---

[2] Metadata is electronically stored information that is transported with an electronic file allowing it to be identified for legal and storage purposes.

The Business World at the Cheung Sha Wan Road address in Hong Kong.  I contacted Hybrid

Electronics who provided me with documentation regarding this and other shipments.  The

correspondence about this transaction came from the e-mail address

"proc____@buzinessworld.com."  The signature line indicates that the representative of The

Business World is either "Jason" or M.A. Khan.  The phone number provided is +852 272____

and the fax is +852 2720____

     55.     I checked publicly available internet registry information which shows that

www.buziness____.com is registered to an individual named "ashiq hussain" at:

> House No. 2/164
> F-6 RF PAC Kamra
> Attock Pu
> 44600 PK
> +92.3335164074

     56.     Open source mapping software reflect that this address is in the "Pakistan

Aeronautical Complex," a Pakistani Air Force installation that contains aircraft manufacturing

and repair facilities.  "PAC Kamra" is also referenced in the orders from Spacecraft Industries.

     57.     Staff at Hybrid Electronics subsequently informed OEE that they had six other

transactions with The Business World:

     1.     Shipped on October 21, 2016, an order was exported and billed to Buziness
World at the Mississagua, Ontario address.
     2.     Shipped on November 15, 2016, an order was exported to The Business World at
the Saddar, Pakistan address and billed to the Mississagua, Ontario address.
     3.     Shipped on November 16, 2016, an order was exported to The Business World at
the Saddar, Pakistan address and billed to the Mississagua, Ontario address.
     4.     Shipped on February 01, 2017, an order was exported to Business World at the
Hong Kong address and billed to the Mississagua, Ontario address.
     5.     Shipped on February 03, 2017, an order was exported to Business World in Hong
Kong and billed to the Mississagua, Ontario address.
     6.     Shipped on April 20, 2017, an order was exported to The Business World at the
Saddar, Pakistan address and billed to the Mississagua, Ontario address.

58.     Hybrid Electronics also informed OEE in July 2017 that they had a pending

export to this customer.  OEE did not detain this shipment.  In the correspondence about this

shipment, which is from "Kamran Wali" of The Business World at the Saddar, Pakistan address,

and using the kamran@                world.com e-mail address, "Wali" acknowledges that there have

been difficulties shipping to Pakistan due to US Government action and requests a delivery to

Hong Kong.  He later changes his request and instead requests shipment to:

> Product Engineering
> Unit 10, Chowk Gowalmandi,
> Daryabad, Gowalmandi, Rawalpindi,
> Punjab, Pakistan-46000.
> Ph: 321-555-6438

Wali then writes:

"Please make sure that there is no paperwork inside the box or even attached with the

box.  Just hand over the export documents to courier."

Wali also provides his DHL account number: 9687       .

59.     On September 22, 2016, Mouser Electronics of Mansfield, Texas exported

products to Transcool in Hong Kong identified as development boards and kits.

Documentation provided to me by Mouser shows that this shipment went to "Jason Gao"

of Transcool and consisted of two different "Critical Link Development Boards" This

part was delivered on 24 September 2016 and signed for by "Mr Jao."

60.     Correspondence Mouser provided me shows two different e-mail

addresses for Gao:  transcool     @gmail.com (TA9) and transcoolaut     @gmail.com

(TA10).  No phone number was given.  Payment for this shipment came from "Business

World" but no further information is given.

61.     Mouser also provided information about another shipment, on July 29, 2017, also to Transcool.  This shipment consisted of various parts for circuit board construction.  All were shipped from the United States to the Cheung Sha Wan Road address.  The payment for these parts was also remitted by "Business World."

62.     Records from Google, Inc. in response to a grand jury subpoena reflect that transcool███@gmail.com (TA9) was registered from an IP address in Pakistan and was only ever accessed from IP addresses in Pakistan.  The backup e-mail is businessinternati███@gmail.com (TA11) and there is no SMS number associated with this account.

63.     Grand jury records from Google, Inc. also contain information about the account transcoolau███@gmail.com (TA10).  This account was registered from an IP address in Pakistan and was only ever accessed from Pakistan.  The backup email is transcool███@gmail.com (TA9).  The SMS number reflects a country code of "92," the code for Pakistan.

64.     AES also shows that on November 09, 2016, Richardson Electronics of Lafox, IL shipped an Ignitron, a Firing Module, an Ignitor Terminal and a Coax Mount to Industria in Hong Kong.  Documents from Richardson show that the "bill to" party is Business World at the Cheung Sha Wan Road address in Hong Kong.  The order reflects that it was placed by "KHAN, M.A." and has phone number +852 2720███ and e-mail address buzinessworl███@gmail.com (TA7) associated with it. This purchase was paid for via bank wire and the funds came from an account in the name of Buziness World at the Canadian International Bank of Commerce.

The Ultimate Consignee for this shipment is:

INDUSTRIA HK LIMITED/ CTI
S/O#E1617618/ AIR WHS
UNIT 01A, G/F., PROFIT
INDUSTRIAL BUILDING,
1-15 KWAI FUNG CRESCENT,
Kwai Fung N.T.
Hong Kong

UPS records provided by Richardson show that this shipment was refused at this address.

Subsequently, Richardson was contacted by "Jason" at proc.hk@buziness   .com to change

delivery.  Jason requested that their agent in Hong Kong be authorized to pick the item up.  The

agent is:

Kenny Lau
CARE, Joy Speed Global Forwarding
Logistics & Warehouse Co., Ltd.
Ground Floor, Winner Godown Building,
1-9 Sha Tusi Road, Tsuen Wan, N.T., Hong Kong.
Ph: 852-3579-5556

65.     On November 10, 2016, Comstat of Brentwood, NH shipped electric

heating resistors to Industria in Hong Kong.  I met with the owners of Comstat and they

provided business documents pertaining to this shipment.  Their point of contact for this

transaction was Maggi Hu of Electro-Power Solutions located at the same Cheung Sha

Wan Road address.  The contact phone number given is +852 2720    and the e-mail

address used was magihu   @gmail.com (TA12).  Comstat noted that the order process

began in August, but was not completed until November.  Comstat received payment for

this shipment from the same Canadian Imperial Bank of Commerce account belonging to

Buziness World of Mississauga, Ontario.  This shipment was initially sent via UPS to:

CTI S/O #E1617618
Air Warehouse, Unit 01A, G/F
1-15 Kwai Fung Cresenct, Kwai Chung, N.T., Hong Kong

Documents from Comstat show that subsequent to this export, they were contacted by Maggi who requested that the shipment be-routed as there was no space at the warehouse. According to Comstat, this box was roughly 12 inches cubed and UPS informed them that the initial recipient refused delivery, as they did not know what the package was. Shipping was ultimately re-routed to:

Industria HK Ltd C/O Care Logistics & Warehouse Co. LTD
Ground Floor, Winner Godown Buidling
1-9 Sha Tusi Road, Tsuen Wan, N.T.,
Hong Kong

66.     Documents furnished by Google, Inc. in response to a grand jury subpoena show that the e-mail address magihu████@gmail.com (TA12) was only ever logged into from Pakistan and the SMS number associated with it begins with"92," the country code for Pakistan.

67.     The AES database reflects that on November 15, 2016 and December 07, 2016 Electronic Services International (ESI) of Farmingdale, NJ shipped various electronic connectors to Industria in Hong Kong. I contacted ESI and they provided me with documentation related to these transactions. ESI was first contacted by "Kamran Wali" (kamran@buziness████com) in June of 2016 for this shipment.

68.     ESI provided an invoice that showed items were shipped on December 07, 2016 to Kamran Wali, phone number + 92 51551████, which relates to Pakistan. The phone number for the November 15 shipment is + 852 379████ which relates to Hong Kong. ESI received a payment on July 13, 2016 from HSBC, reflecting an e-mail address of james@indust████ in the amount of 13503.00 USD. Although redacted, it appears that the account is in the name of Industria Hong Kong Limited. Another payment was received on May 12, 2016 from HSBC

account number 7618 [        ], from an account in the name of Business Intl GB.  I also reviewed

records from UPS that the connectors shipped to Hong Kong in November of 2016 were in turn

shipped to The Business World in Pakistan.

69.    I searched records for Hong Kong Internet registry information which reflected

that the industria.hk domain is owned by:

INDUSTRIA HONG KONG LIMITED
253, 2nd Floor Kau On Building
251-253 Cheung Sha Wan Road
Sham Shui Po, Kowloon, HK

The contact name is Waheed Ahmed, +852-2708 [     ], buzines [    ]@gmail.com (TA2).

70.    AES records show that on December 18, 2016, JAF International of

Fremont, CA exported "monitors and output devices valued at a total of 3580 USD" to

the company named "Product Engineering" in Rawalpindi, Pakistan.  Documents

provided to me by JAF show that the buziness [     ]@gmail.com (TA5) e-mail account

was used to facilitate this export.  In this correspondence, Kamran Wali of The Business

World in Rawalpindi, Pakistan arranged for the shipment.  The products were paid for via

a wire transfer from an account held by Buziness World at the Canadian Imperial Bank of

Commerce.  In fact, the estimate provided by JAF indicates that the purchaser was Haji

Wali M Sheikh of the Buziness World in Mississauga, Ontario.

71.    I also queried AES records for the company "Product Engineering" as used in the

JAF International shipment.  The records show that Microdaq.com in Contoocook, NH exported

products to "Product Engineering" in Rawalpindi, Pakistan on December 20, 2016.  I met with

employees of Microdaq who confirmed that they did ship "MCC 100/Dual 50-Pin Hi-Density

Cable" valued at 1344 USD and "MCC 16-Channel, 16-Bit Analog Output Board" valued at

5172 USD to this company. The point of contact was Waqar Imran, phone number

92321555⬜, e-mail address proden⬜@gmail.com (TA13).

      72.     Microdaq also provided documentation showing that the payment for this

shipment came from the Canadian Imperial Bank of Commerce account maintained by Buziness

World.

      73.     Records obtained from Google via grand jury subpoena reflect that the

proden⬜@gmail.com (TA13) account was created from an IP address in Pakistan and has only

been logged into from Pakistan.  The backup e-mail provided is ⬜@businessworld.com and

the SMS number reflects country code "92," which is assigned to Pakistan.

      74.     On May 27, 2017, a shipment of "api Technologies Wenschel Model 980 Coaxial

Phase Shifters" was shipped from Arrow Electronics, d/b/a Richardson RFPD of Reno, Nevada

was exported from the United States on to Transcool Auto Air Conditioning. The e-mail address

associated with Transcool is transcool⬜@gmail.com (TA9), the person signs the emails

"Jason" and the phone numbers are +852 5527⬜ and +852 2720⬜. The fax is +852 2720

⬜.

      75.     Arrow received payment via wire from HSBC bank.  Although the information

provided by Arrow is somewhat redacted, it is clear that the bank account number began with

68722 and that it is held by Business World.  The associated e-mail address is

busines⬜@hotmail.com.

      76.     On or about January 26, 2018, SA Michael Perry of OEE New York detained a

shipment of a 3D printer purchased from B&H Photo of Florence, New Jersey and destined to

Buziness World in Rawalpindi, Pakistan.  I have reviewed a report of his actions in this detention

as well as documentation from the shipment provided by B&H Photo.

77.     These documents demonstrate that the buyer of the printer was Buziness

World in Mississauga, Ontario, Canada.  The e-mail account used to communicate with

B&H Photo is buziness     @gmail.com (TA5) and all of this communication reflects

that Kamran Wali in Pakistan is the only person involved in this sale.  SA Perry

attempted to contact The Buziness World at phone number 905-997    , a number

linked to the address of the buyer, and spoke with "Mr. Wali," who told SA Perry that the

transaction was his father's and he must speak with him at 416-875-    .  No response

was ever received.  SA Perry also sent an e-mail to buziness    @gmail.com (TA5) and

received no response.

78.     In March of 2018, another agent at BIS Boston was contacted by representatives

from Tech-Etch, a company in Plymouth, Massachusetts.  According to staff at Tech-Etch, they

were contacted by Kamran Wali of the Business World in Pakistan regarding Electro Magnetic

and Radio Frequency shielding materials made from copper beryllium.  Wali was using both

buzines    @gmail.com (TA5) and kamran@buziness    com to communicate.  An end-

use statement was provided in which The Business World stated the shielding materials will be

used in hospitals to shield MRI rooms by:

> Precision Engineering Services
> Plot # 102, Street #7, I-10/3
> Industrial Area, Islamabad
> Ph: 92-51-444-    
> Fax: 92-51-444-    

79.     This order was paid via wire from the Buziness World account at the Canadian

Imperial Bank of Commerce.  Tech-Etch employees in turn asked for further information and

clarification on this order.  In response, Wali provided a front and back scan of a Permanent

Resident Card from Canada, number 5266-      An older male with a white beard is depicted in

the photograph.  His name is listed as Haji Wali Muham SHEIKH, born in 1938 and he is a native of Pakistan.  When asked about why payment came from Canada, Wali responded:

"The wire made by Buziness World Canada (because it's a proprietary account, the slip shows individual name). The funds transfer have been made by them as a favour as we had returned money to customer and it will be repaid against delivery to us which we will settle with Buziness World Canada later."

PRESERVATION OF EVIDENCE

80.     On or about October 18, 2017, and again on May 10, 2017, pursuant to 18 U.S.C. § 2703(f)(1), I sent preservation request letters to Google for:

    Asad[____]@gmail.com (TA3), Buziness[____]@gmail.com, (TA5),

    buzinessworl[____]@gmail.com (TA7), transcool[____]@gmail.com (TA9),

    transcoolaut[____]@gmail.com (TA10), magihu[____]@gmail.com, (TA12),and

    proden[____]@gmail.com (TA13).

81.     Again, on August 23, 2018 pursuant to 18 U.S.C. § 2703(f)(1) I sent preservation request letters to Google for:

    Asad.[____]@gmail.com (TA3), Buziness[____]@gmail.com, (TA5),

    wali.product[____]@gmail.com (TA6), buzinessworl[____]@gmail.com (TA7),

    proc.business[____]@gmail.co0m (TA8), transcool[____]@gmail.com (TA9),

    transcoolau[____]@gmail.com (TA10), businessinternati[____]@gmail.com (TA11),

    magihu[____]@gmail.com, (TA12), and proden[____]@gmail.com (TA13).

82.     Then, on September 06, 2018, I sent a preservation letter to Google for:

buziness[____]@gmail.com (TA2), busines[____]@gmail.com (TA3), and

businessworl[____]@gmail.com (TA7).

27

83.    On September 10, 2018, I sent a preservation letter to Google for:

Industria███@gmail.com (TA1).

84.    Based on the aforementioned facts, I submit that there is probable cause that the

users of the Target Accounts in Pakistan and parties in the United Kingdom, Canada,

Hong Kong, Pakistan, and the United States, have acted in furtherance of a conspiracy to

purchase US-origin goods for ultimate shipment to entities in Pakistan which are

prohibited from receiving US Exports.  As such, their actions constitute violations of the

Subject Offenses.  Accordingly, probable cause exists that evidence of this illegal

conduct is present in the Target Accounts.

<u>TECHNICAL BACKGROUND</u>

85.    In my training and experience, I have learned that Google provides a variety of

online services, including e-mail access, to the public.  Google allows subscribers to obtain e-mail

accounts at the domain name gmail.com, like the Target accounts.  Subscribers obtain an account

by registering with Google.  During the registration process, Google asks subscribers to provide

basic personal information.  Therefore, Google's computers are likely to contain stored electronic

communications (including retrieved and unretrieved e-mail for Google subscribers) and

information concerning subscribers and their use of Google services, such as account access

information, e-mail transaction information, and account application information.  In my training

and experience, such information may constitute evidence of the crimes under investigation

because the information can be used to identify the account's user or users.

86.    Google e-mail subscribers can access their accounts on servers maintained and/or

owned by Google from any computer connected to the Internet located anywhere in the world.  E-

mail messages and files sent to an Google account are stored in the account's "inbox" as long as

they are not identified as "junk mail," the account has not exceeded the maximum storage limit, or the account is not set up to forward messages to another e-mail account.  If the message/file is not deleted by the subscriber, the account is below the maximum storage limit, and the account has not been inactivated, then the message/file will remain on the server indefinitely.  E-mail messages and files sent from a Google account will remain on the server unless the account user changes the default account settings.

87.     A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail.  If a Google e-mail user writes a draft message but does not send it, that message may also be saved by Google but may not include all of these categories of data.

88.     In my training and experience, in addition to e-mails, Google subscribers can also store files such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files, on servers maintained and/or owned by Google.  Evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

89.     In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.  Such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## LEGAL AUTHORITY

90.    The government may obtain both electronic communications and subscriber information from an e-mail provider by obtaining a search warrant.  18 U.S.C. §§ 2703(a), 2703(c)(1)(A).

91.    Any court with jurisdiction over the offense under investigation may issue a search warrant under 18 U.S.C. § 2703(a), regardless of the location of the website hosting company or e-mail provider whose information will be searched.  18 U.S.C. § 2703(b)(1)(A).  Furthermore, unlike other search warrants, § 2703 warrants do not require an officer to be present for service or execution of the search warrant.  18 U.S.C. § 2703(g).

92.    If the government obtains a search warrant, there is no requirement that either the government or the provider give notice to the subscriber.  18 U.S.C. §§ 2703(b)(1)(A), 2703(c)(3).

93.    This application seeks a warrant to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this court, regardless of where Google has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States. *See* 18 U.S.C. § 2713.

### FOURTEEN-DAY RULE FOR EXECUTION OF WARRANT

94.    Federal Rule of Criminal Procedure 41(e)(2)(A),(B) directs the United States to execute a search warrant for electronic evidence within 14 days of the warrant's issuance.  If the Court issues this warrant, the United States will execute it not by entering the premises of Google,

as with a conventional warrant, but rather by serving a copy of the warrant on the company and awaiting its production of the requested data.  This practice is approved in 18 U.S.C. § 2703(g), and it is generally a prudent one because it minimizes the government's intrusion onto Internet companies' physical premises and the resulting disruption of their business practices.

95.     Based on my training and experience and that of other law enforcement, I understand that e-mail providers sometimes produce data in response to a search warrant outside the 14-day period set forth in Rule 41 for execution of a warrant.  I also understand that e-mail providers sometimes produce data that was created or received after this 14-day deadline ("late-created data").

96.     The United States does not ask for this extra data or participate in its production.

97.     Should Google produce late-created data in response to this warrant, I request permission to view all late-created data that was created by Google, including subscriber, IP address, logging, and other transactional data, without further order of the Court.  This information could also be obtained by grand jury subpoena or an order under 18 U.S.C. § 2703(d), neither of which contains a 14-day time limit.  However, law enforcement personnel will seek to avoid reviewing any late-created data that was created by or received by the account-holder(s), such as e-mail communications, absent a follow-up warrant.

98.     For these reasons, I request that the Court approve the procedures in Attachment B, which set forth these limitations.

<u>CONCLUSION</u>

99.     Based on the information described above, I have probable cause to believe that records and data from the Target Accounts (as described in Attachment A), contain evidence, fruits, and instrumentalities of the above-listed crimes (as described in Attachment B).

100.    The procedures for copying and reviewing the relevant records are set out in Attachment B to the search warrant.

Respectfully submitted,


/s/ Brendan M. Quinlan
Brendan M. Quinlan
Special Agent
Office of Export Enforcement
Bureau of Industry and Security
United States Department of Commerce


Subscribed and sworn to before me on this 27th day of September, 2018.


/s/ Andrea K. Johnstone
ANDREA K JOHNSTONE
United States Magistrate Judge

**ATTACHMENT A**

The premises to be searched and seized are (1) the e-mail accounts identified as

industri⬜⬜@gmail.com ("TA1"), buzines⬜⬜@gmail.com ("TA2")

Asad.⬜⬜@gmail.com ("TA3"), business⬜@gmail.com ("TA4"),

Buziness⬜@gmail.com ("TA5"), wali.produc⬜@gmail.com ("TA6"),

buzinesswor⬜@gmail.com ("TA7"), proc.business⬜⬜@gmail.com  ("TA8"),

transcool⬜⬜@gmail.com ("TA9"), transcoolau⬜@gmail.com ("TA10") ,

businessinternat⬜⬜@gmail.com ("TA11"),  magihu⬜@gmail.com ("TA12"),  ,

proden⬜@gmail.com ("TA13"), ("the Target Accounts"), (2) other user-generated data stored

with the Target Accounts, and (3) associated subscriber, transactional, user connection

information associated with the Target Accounts, as described further in Attachment B.  This

information is maintained by Google, Inc. ("Google"), which accepts service of process at 1600

Amphitheatre Parkway, Mountain View, California.

## **ATTACHMENT B**

**I.    Search Procedure**

  A. Within fourteen days of the search warrant's issue, the warrant will be served on Google, which will identify the accounts and files to be searched, as described in Section II below.

  B. Google will then create an exact electronic duplicate of these accounts and files ("the account duplicate").

  C. Google will provide the account duplicate to law enforcement personnel.

  D. Law enforcement personnel will then search the account duplicate for the records and data to be seized, which are described in Section III below.

  E. Law enforcement personnel may review the account duplicate, even if it is produced more than 14 days after the warrant issues, subject to the following limitations.  If data was created by Google after fourteen days from the warrant's issue ("late-created data"), law enforcement personnel may view any late-created data, including subscriber, IP address, logging, and other transactional data that was created by Google without a further order of the Court.  Law enforcement personnel will seek to avoid reviewing any late-created data that was created by or received by the account-holder(s), absent a follow-up warrant.

2

**II.   Accounts and Files to Be Copied by Google Personnel**

A.   All data files associated with the Target account within the possession, custody, or control of Google, regardless of whether such information is stored, held or maintained inside or outside of the United States, including:

1.   The contents of all e-mail, whether draft, deleted, sent, or received;

2.   The contents of all text or instant messages;

3.   The contents of all electronic data files, whether word-processing, spreadsheet, image, video, or any other content;

4.   The contents of all calendar data;

5.   Lists of friends, buddies, contacts, or other subscribers;

6.   Records pertaining to communications between Google and any person regarding the Target Account and any e-mail accounts associated with the Target Account, including contacts with support services and records of actions taken.

B.   All subscriber and transactional records for the Target Account and any associated e-mail accounts, including:

1.   Subscriber information for these and any associated e-mail accounts:

a.   Name(s) and account identifiers;

3

b.      Address(es);

c.      Records of session times and durations;

d.      Length of service (including start date) and types of service utilized;

e.      Telephone instrument number of other subscriber number or identity,
        including any temporary assigned network address;

f.      The means and source of payment for such service (including any credit
        card or bank account number); and

g.      The Internet Protocol address used by the subscriber to register the
        account or otherwise initiate service.

2.      User connection logs for any connections to or from these and any associated e-
mail accounts, including:

a.      Connection time and date;

b.      Disconnect time and date;

c.      The IP address that was used when the user connected to the service;

d.      Source and destination of any e-mail messages sent from or received by
        the account, and the date, time, and length of the message; and

e.      Any address to which e-mail was or is to be forwarded from the account or
        e-mail address.

4

**III.      Records and Data to be Searched and Seized by Law Enforcement Personnel**

A.      The items to be seized, which are believed to be evidence and fruits of violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1705; and, the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774; and, an ongoing criminal conspiracy to commit these offenses, 18 U.S.C. § 371, are as follows:

1.      Records and information related to violations of the aforementioned statutes and regulations;

2.      Records and information related to any purchases, sales, or requests for purchase or sale of suspected U.S.-origin goods or suspected export-controlled items;

3.      Records and information related to payments for any U.S.-origin goods or suspected export-controlled items, including bank records, wire transfers, checks, credit card bills, account information, PayPal transactions; other payment websites, or other financial records;

4.      Records and information related to any shipping, delivery, or customs declaration of U.S.-origin goods or suspected export-controlled items;

5

5.      Records and information related to actual or potential buyers and sellers of U.S.-origin goods or suspected export-controlled items, including biographical information, addresses, e-mail addresses, user names, social security numbers, or other pertinent identifying information;

6.      Records and information related to the identity and whereabouts of any of the individuals or entities associated with the Target Accounts, including biographical information, addresses, e-mail addresses, user names, social security numbers, or other pertinent identifying information;

7.      Records and information related to the use or planned use of U.S.-origin goods or suspected export-controlled items;

B.      All of the subscriber, transactional, and logging records described in Section II(B).

6

# CERTIFICATE OF AUTHENTICITY

I, _____, attest, under penalties of perjury, that the information contained in this declaration is true and correct.  I am employed by Google, Inc., and my official title is _____.  I am a custodian of records for Google, Inc.  I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google, Inc., and that I am the custodian of the attached records consisting of _____ (folders/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Google, Inc.; and

c.      such records were made by Google, Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____        _____
        Date                                            Signature